ENTERED ON

MAR - 6 2009

DOCKET

UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | | |
|---|---|---|
| IN RE: | ) | CHAPTER 13 |
| | ) | |
| MARK E. PULLEN, | ) | CASE NO. 07-65415-MHM |
| MARY KAY PULLEN, | ) | |
| | ) | |
| Debtors. | ) | |
| | ) | |

| | | |
|---|---|---|
| CAIN V. HARRIS, | ) | |
| | ) | |
| | ) | **ADVERSARY PROCEEDING** |
| Plaintiff, | ) | **NO. 08-6010** |
| v. | ) | |
| | ) | |
| MARK E. PULLEN, | ) | |
| MARY KAY PULLEN, and | ) | |
| SUNTRUST BANK, | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

| | | |
|---|---|---|
| MARK E. PULLEN, | ) | |
| MARY KAY PULLEN, | ) | |
| | ) | |
| | ) | **ADVERSARY PROCEEDING** |
| Plaintiffs, | ) | **NO. 07-6620** |
| v. | ) | |
| | ) | |
| CAIN V. HARRIS, | ) | |
| | ) | |
| Defendant. | ) | |

**OPINION AND ORDER ON MOTIONS FOR SUMMARY JUDGMENT**

These two adversary proceedings have been consolidated because they concern

common questions of law and fact.  The parties have filed motions for partial summary

judgment on the limited issue of the validity of the levy and sale of the undivided one-half

interest of Debtor Mark Pullen in Debtors' real property.  The material facts are undisputed.

## STATEMENT OF FACTS

Debtors' Chapter 13 bankruptcy case commenced April 2, 2007.  The central issue in these adversary proceedings is the state of title to Debtors' real estate located at 330 Jade Cove Drive, Roswell, Fulton County, Georgia (the "Property").  Prior to August 1, 2006, Mark Pullen ("Debtor") and his wife, Mary Kay, owned the Property jointly. Debtors acquired the Property in June, 1987, and conveyed a purchase money security deed to Anchor Savings Bank.  That security deed was ultimately assigned to Chase Mortgage Services, Inc. ("Chase") in 1997 (the "First Deed").

On December 9, 1997, John D. Ficklen ("Ficklen") obtained a judgment against Debtor in the amount of $22,365 (the "Ficklen judgment") and a writ of *fieri facias* was recorded on the General Execution Docket ("GED") the same day.  On March 23, 1999, Ficklen assigned 40% of the judgment to Gary Harris, the attorney who had represented Ficklen in the litigation against Debtor.  That assignment was recorded January 25, 2002. On February 14, 2005, Debtors granted a second priority deed to secure debt to SunTrust Bank ("SunTrust"); that deed was recorded March 29, 2005 (the "Second Deed").[1] SunTrust has filed a proof of claim in Debtors' bankruptcy case in the amount of $83,199.50 plus interest accruing at 11.75%.

On March 10, 2004, to prevent the Ficklen judgment from becoming dormant, Gary Harris requested a levy and execution from the Fulton County Marshal.  The Marshal made a *nulla bona* return, stating that he had diligently searched for assets upon which to levy and found none (the "*nulla bona*").  Pursuant to O.C.G.A. §9-12-60, the

---

[1] SunTrust was unaware of the Ficklen judgment against Debtor, as it did not obtain a title examination prior to the transaction with Debtors.

2

judgment would have become dormant seven years after issuance without the *nulla bona* return entered on the GED. Entry of the *nulla bona* return preserved the judgment for another seven years.

In 2006, after offering SunTrust an opportunity to purchase the Ficklen judgment, which was declined, Gary Harris negotiated, on behalf of his son Cain Harris, with Chase for Cain Harris to purchase the First Deed for $53,856.03. Cain Harris' funds were paid to Chase but Chase allegedly inadvertently assigned the First Deed to Gary Harris. That assignment was dated May 2, 2006. Gary Harris then executed a Subordination of Security Deed to Lien of Judgment,[2] which purported to subordinate the First Deed to the Ficklen judgment (the "Subordination"). The Subordination was recorded May 2, 2006. Gary Harris then assigned the First Deed to Cain Harris.

On April 18, 2006, another son of Gary Harris, Cleveland Harris, who is disabled, purchased the remaining 60% of the Ficklen judgment from Ficklen for $6,000. The assignment from Ficklen to Cleveland Harris was recorded May 2, 2006.

On August 1, 2006, Gary Harris instructed the Fulton County Marshal (the "Marshal") to levy on and sell the one-half undivided interest of Debtor in the Property (the "Sale").[3] At the Sale, the Marshal purported to sell the one-half undivided interest of Debtor in the Property to Helen Li for $50,000.[4] A Marshal's Deed was recorded in

---

[2] It is unclear what, if any, consideration supported the Subordination.

[3] At first, the Marshal refused to levy because of the existence of the SunTrust deed to secure debt, but Gary Harris filed an action against the Marshal for a writ of mandamus. Then the Marshal relented, and Gary Harris dismissed the writ action.

[4] Although that purchase price was more than sufficient to satisfy the Ficklen judgment, no satisfaction of the Ficklen judgment has been recorded. The amount by which the Sale proceeds exceeded the amount of the Ficklen judgment, was paid to Cain Harris and applied against the loan secured by the First Deed.

September, 2006.  On October 11, 2007, Cain Harris paid Ms. Li $57,000, and Ms. Li executed a quitclaim deed in favor of Cain Harris.

Cain Harris asserts that, as a result of the Sale, he owns Debtor's one-half undivided interest in the Property in fee simple and has a lien against the remaining one-half undivided interest in the Property, which is owned by Debtor's wife.  Cain Harris filed a proof of claim in Debtors' bankruptcy case in the amount of $56,890.68 with interest accruing at 6.625%.  Debtors and SunTrust challenge the validity of the Sale under O.C.G.A. 9-13-60.  SunTrust also challenges the validity of the *nulla bona* return entered in 2004.

## DISCUSSION

As a preliminary matter, Cain Harris asserts that Helen Li and the Marshal are indispensable parties to these proceedings.  Bankruptcy Rule 7019, which incorporates Fed. R. Civ. Proc. 19, provides that a person

> shall be joined as a party in the action if (1) in the person's absence complete relief cannot be accorded among those already parties, or (2) the person claims an interest relating to the subject of the action and is so situated that the disposition of the action in the person's absence may (i) as a practical matter impair or impede the person's ability to protect that interest or (ii) leave any of the persons already parties subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations by reason of the claimed interest.

Helen Li no longer owns an interest in the Property and her absence in these proceedings will not prevent granting complete relief to those who are parties.  The remedy against the Marshal, if any, lies in an action against him.  *Pendergrast v. Wiseman*, 80 Ga. 419, 7 S.E. 228 (1888).

Cain Harris also asserts that a ruling on the issue presented in the motions for summary judgment has already been entered in an opinion issued by the U.S. District Court relating to Mr. Harris' appeal in the main bankruptcy case of an order denying

dismissal. The language to which Cain Harris refers is a recitation of facts in a preliminary order remanding the order to the bankruptcy court for supplemental findings. It does not constitute a ruling or even a finding of fact, as the legal dispute surrounding title to the Property had not been presented or argued to the U.S. District Court. It was not a final decision on the merits and has no preclusive effect. *See Wallis v. Justice Oaks II, Ltd.*, 898 F. 2d 1544 (11th Cir. 1990).

SunTrust contends the Sale is invalid because the *nulla bona* obtained by Gary Harris in 2004 was insufficient to prevent the Ficklen judgment from becoming dormant. Specifically, SunTrust alleges that the Marshal failed to undertake a diligent search, or indeed any search, for assets before entering the *nulla bona*. A *nulla bona* return prevents dormancy of a judgment, however, whether true or false. *Pendergrast v. Wiseman*, 80 Ga. 419, 7 S.E. 228 (1888). The case of *Hanks v. Pearce*, 96 Ga. 159, 22 S.E. 676 (1895), is inapposite because in that case the return entered by the sheriff contained no statement that a diligent search for assets had been undertaken *by the sheriff*. The return contained the "merely irrelevant fact" that the officer received directions from the plaintiff's attorney "for the collection of this fi. fa." *Id.* SunTrust's contention that the judgment is dormant and therefore invalid is without merit.

Debtors and SunTrust assert that the Sale is invalid because it did not comply with O.C.G.A. § 9-13-60, which provides:

> (a) Where any person other than the vendor or other than the holder or assignee of the purchase money or secured debt has a judgment against a defendant in execution who does not hold legal title to property but has an interest or equity therein, such plaintiff in execution may take up the debt necessary to be paid by the defendant in order to give the defendant legal title to the property by paying the debt with interest to date if due and interest to maturity if not due; and thereupon a conveyance to the defendant in execution or, if he is dead, to his executor or administrator shall be made by the vendor or holder of title given

5

to secure the debt or, if dead, by the executor or administrator thereof. When the conveyance has been filed and recorded, the property may be levied on and sold as property of the defendant.

(b) In all cases provided for in subsection (a) of this Code section, notice of the levy and time of sale shall be given by the levying officer to the vendor or holder of the title given to secure the debt, if known, and also to the defendant in execution and, in case of death, to their legal representatives. Depositing a properly addressed and stamped letter into the United States mail shall be deemed sufficient notice under this subsection.

(c) The proceeds of the sale shall be applied first to the payment of liens superior to the claims taken up by the plaintiff in execution, next to the payment of principal advanced by the plaintiff in execution to put title in defendant, with interest to date of sale, and the balance to the execution under which the property was sold, and to other liens according to priority, to be determined as provided by law.

Debtors and SunTrust contend that, because legal title to the Property was never returned to Debtor, the Sale attempted an execution only upon Debtor's equitable interest, which is not subject to levy and sale in Georgia. Cain Harris asserts that §9-13-60 applies only to deeds with priority over the judgment lien and the voluntary subordination of the First Deed to the judgment left the one-half undivided interest of Debtor in the Property subject to levy and sale. No Georgia case has been cited in which a levy and sale occurred on property in which the deed to secure debt had been subordinated to a judgment lien. A review of the Georgia case law relating to §9-13-60 leads to the conclusion that Cain Harris' contentions are without merit.

In the case of *Ashley v. Cook*, 109 Ga. 653, 35 S.E. 89 (1900), the grantor executed a security deed to Jones. When the debt secured by the security deed went unpaid, Jones proceeded to obtain a judgment against the grantor and then executed on that judgment

without the reconveyance required by §9-13-60.[5] The court found that, due to the lack of

reconveyance, the levy and sale was void. The court explained:

> When a security deed is executed and delivered, the legal title to the
> property therein described vests in the grantee, and remains there
> until [1] the debt is paid, and the security deed canceled in the
> manner prescribed by law for the cancellation of mortgages, or
> [2] a reconveyance is made by the grantee to the grantor, or
> [3] there has been a judgment recovered on the debt, a reconveyance
> filed and recorded, and a sale made by the sheriff under a lawful and
> regular levy.

*Id.* at 90.

In the case of *Dedge v. Bennett,* 138 Ga. 787, 76 S.E. 52 (1912), the court

recognized that the Georgia statute dealing "with the registration of deeds, mortgages,

etc., the notice arising therefrom, and the priority resulting in a competition between

deeds or liens...does not affect the statutory method provided for redeeming land of a

judgment debtor and subjecting it to the judgment." *Id.* at 52. Therefore, contrary to the

arguments of Cain Harris, priority is not a relevant issue in determining compliance with

O.C.G.A. § 9-13-60.

The case of *Citizens' Mercantile Co. v. Easom,* 158 Ga. 604, 123 S.E. 883 (1924),

presents an interesting set of facts. In 1914, Easom's mother acquired certain real

property. In 1921, two deeds to secure debt to that property were recorded by the bank,

securing loans to Easom's mother. In 1922, Citizen's Mercantile Co. ("Mercantile")

obtained a judgment against Easom's mother. Easom owned real estate contiguous to his

mother's and his mother told him that, if he paid off the two deeds to secure debt on her

property, he could have her land. In March, 1923, Easom went to the bank and paid the

---

[5] In this opinion, the relevant statutes will be referred to as §9-13-60, instead of predecessor
designations in the various codes promulgated in the state of Georgia. The principle that an equitable
interest in property is not subject to levy and that redemption and reconveyance is necessary before levy
can occur has not changed.

7

two loans and the bank officer wrote a cancellation on the deeds, but the cancelled deeds were not recorded. Then in August 1923, Mercantile levied and sold the property. Easom, apparently trying to remedy his mistake, went back to the bank and asked the bank to transfer the deeds to him. The court held that cancellation of the deeds occurred when so endorsed by the bank and acted as a reconveyance of the legal title to Easom's mother, thus allowing Mercantile to conduct the levy and sale.

In a case cited by Cain Harris, *Moncrief Furnace Co. v. Northwest Atlanta Bank*, 193 Ga. 440, 19 S.E. 2d 155 (1942), while a lawsuit was pending against McGuire, he transferred title to his real estate to the bank who held two deeds to secure debt on the property. The judgment creditor sued the bank to set aside the transfer as a fraudulent conveyance because the transfer was a voluntary transfer, i.e. without valuable consideration, made while the debtor was insolvent. The court reversed the dismissal of suit to set aside a fraudulent conveyance, holding that the judgment creditor had alleged sufficient facts to overcome the bank's demurrer.

In what appears to be *dicta*, the *Moncrief* court made the statement: "Ordinarily a judgment creditor cannot levy his execution on land conveyed by a *prior* security deed, without first redeeming the land and proceeding otherwise as required by the Code." *Id.* at 441 (emphasis supplied). Cain Harris relies upon this statement to support his contention that his subordination of the First Deed, thereby according the judgment the first priority lien position on the Property, permitted him to levy and sell Debtor's interest in the property without reconveying legal title to him. The court's use of the term "prior" was without discussion and was not critical to the decision, as the two deeds held by the bank were, in fact, prior to the judgment. The court's simple statement is insufficient to establish that §9-13-60 applies only to "prior" security deeds.

8

The case of *Perry v. Heflin*, 202 Ga. 143, 42 S.E. 2d 378 (1947), presents facts that illustrate a possible reason that Gary Harris attempted the method he used to execute on the Property. In 1941, Perry obtained a judgment against Heflin. In 1943, Heflin bought real estate jointly with her husband and jointly conveyed a security deed to the bank.[6] To clear the way for a levy and sale, Perry approached the bank with an offer to pay half the debt and obtain a quitclaim deed as to Heflin only; the bank refused. Instead, the bank demanded full payment of the debt plus three months' unearned interest. Perry was financially unable to pay the whole debt. Therefore, Perry sued for appointment of a receiver to sell Heflin's equity in the real estate and satisfy the judgment. The court recognized that equity can relax the requirements of §9-13-60 under certain circumstances ("peculiar facts"): the financial inability of the judgment creditor to redeem the property, together with no other property of the judgment debtor available subject to levy. The court noted the additional peculiar facts of the bank's demand for unearned interest and the necessity for the judgment creditor to pay off the obligation of a third party against whom she had no claim. On those facts, the court concluded that the equitable remedy of appointment of a receiver was appropriate.[7]

In the case of *Dean v. Andrews*, 236 Ga. 643, 225 S.E.2d 38 (1976), a former wife attempted to levy on real property owned by her former husband and his current wife on a judgment against him for unpaid child support. The real estate was subject to a security deed from the husband and his current wife executed the year of their marriage. In holding against the former wife, the court stated, "a security deed is an absolute deed

---

[6] Based upon the dates alone, it appears that the judgment was recorded before the security deed on the subject property. Priority of the obligations, however, was not discussed.

[7] Again, the court, without discussion, stated, "A judgment creditor cannot levy his execution on land conveyed by a *prior* security deed, without first redeeming the land and proceeding otherwise as required by the Code...." That bare statement, without any discussion of the role of priority on the facts under consideration, is no more persuasive here than in *Moncrief*, 193 Ga. 440, 19 S.E. 2d 155 (1942).

passing legal title of said property to the grantee creditor (Code citation omitted) thus leaving no leviable interest in the property in the grantors." *Id.* at 643.

In the case of *Hampton v. Gwinnett Bank & Trust Co.,* 251 Ga. 181, 304 S.E. 2d 63 (1983), a judgment creditor sought an injunction against an insolvent judgment debtor to prevent any transfer of his real property and to appoint a receiver to sell the property subject to the existing debt. The real estate was subject to two assumable "loan deeds." The court concluded the equitable remedy sought in lieu of compliance by the judgment creditor with the §9-13-60-required redemption was appropriate because if the property were levied upon and resold by the judgment creditor, the interest rates to finance the sale would be double those already on the property, harming both the judgment creditor and the judgment debtor.

It is noteworthy that in both *Perry v. Heflin,* 202 Ga. 143, 42 S.E. 2d 378, and *Hampton v. Gwinnett Bank & Trust Co.,* 251 Ga. 181, 304 S.E. 2d 63, the avenue for relief was the equitable remedy of appointment of a receiver. The only avenue at law available to a judgment creditor is compliance with §9-13-60.

In the case of *Dime Savings Bank of New York FSB v. Sandy Springs Associates, Inc.,* 261 Ga. 485, 405 S.E. 2d 491 (1991), Neely and Pearson entered into a sales contract and escrow agreement in which Neely would transfer title to certain real estate to Pearson when Pearson paid off the promissory note. Pearson did not pay off the note. Sandy Springs Associates, Inc. ("Sandy Springs") obtained a judgment against Pearson. Then, Neely sold the property to Pearson's wife, who paid off the debt to Neely with the proceeds from sale of the property to Poston on the same day. Poston conveyed a security deed on the property to Dime Savings Bank for a purchase money loan. Sandy Springs sued to set aside the sale to Mrs. Pearson. Judgment was rendered against Sandy Springs

10

because it had not followed the statutory procedure in §9-13-60 and could not show facts to justify an equitable remedy.

Based upon the lessons in the cases discussed above, the solution Gary Harris sought to the strictures of §9-13-60 is not one recognized by Georgia law. The principle underlying §9-13-60 is that a judgment creditor cannot levy upon a equitable interest in property. Before a judgment creditor may levy upon property in which the judgment debtor holds only equitable title, with legal title in a third party lender, the judgment creditor must first pay off the debt owed to the party holding legal title and then accomplish a reconveyance of the legal title to the judgment debtor. That second step can be accomplished by obtaining an assignment of the deed conveying legal title and then executing a quitclaim deed for levy and sale. Such a transaction can be accomplished virtually simultaneously with the levy, thus avoiding the hypothetical posited by Gary Harris that a judgment debtor could avoid levy by simply repeatedly conveying security deeds to creditors junior to the judgment creditor.

Cain Harris also suggests that legal title must be severable because Debtors conveyed a security deed to both Chase and SunTrust. This suggestion, however, misinterprets the concept of the divisibility of title to real property into legal and equitable interest. Upon the conveyance of a security deed to a lender, the lender receives bare legal title coupled with a promise to repay the debt. The nature and extent of the legal title does not vary upon each month's loan payment. Upon foreclosure by the lender, the lender does not sell just a portion of the property sufficient to repay the debt. The lender sells the whole property. If the first lender conducts the sale, the legal title of any second priority lender is cut off. If it is the second lender conducting the sale, the second lender must satisfy the first lender's lien before the second lender is entitled to any proceeds

11

from the sale. If the second lender were also junior to a judgment creditor, the second lender would also have to satisfy the judgment creditor.

Gary Harris attempted a "workaround compliance" with §9-13-60, but he failed to take the final and necessary step of reconveying the Property to Debtor. Upon paying off the debt to Chase, he did not obtain a cancellation of the deed, and he did not, after obtaining the assignment from Chase, execute a quitclaim for levy and sale. Therefore, because the Property was not reconveyed to Debtor, the Marshal's sale of Debtor's one-half undivided interest in the Property was void.[8] Accordingly, it is hereby

ORDERED that the motions for partial summary judgment filed by Debtors and SunTrust are *granted:* the levy and sale of Debtor's one-half undivided interest in the Property is *void*.

**The Clerk, U.S. Bankruptcy Court, is directed to serve** a copy of this order upon the parties' attorneys and the Chapter 13 Trustee.

IT IS SO ORDERED, this the _5th_ day of March, 2009.

_____
MARGARET H. MURPHY
UNITED STATES BANKRUPTCY JUDGE

---

[8] It is unnecessary to decide whether Harris would have been required also to satisfy the security deed held by SunTrust, as Harris did not attempt to satisfy SunTrust's debt, nor can it be accomplished while Debtors are protected by the Bankruptcy Code. To clear the way for a levy and sale, however, it would appear to be necessary to reconvey legal title of the Property to Debtors, irrespective of priority.